# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CHANTAL ATTIAS, *et al.*,<br><br>                              Plaintiffs,<br><br>            v.<br><br>CAREFIRST, INC., *et al.*,<br><br>                              Defendants. | Civil Action No. 1:15-cv-00882-CRC |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED
## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Chantal Attias, Andreas Kotzur, Richard Bailey, Latanya Bailey, Curt Tringler, Connie Tringler, and Lisa Crider ("Plaintiffs") filed this Class Action against Defendants CareFirst, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst of Maryland, Inc.; and CareFirst BlueChoice ("CareFirst" or "Defendants"). Plaintiffs alleged, among other things, that Defendants breached their insurance contracts with Plaintiffs when unknown, third-party cyberattackers hacked into CareFirst's network in 2014 and accessed some members' names, birthdates, email addresses, and subscriber identification numbers (the "2014 data breach"). Specifically, Plaintiffs brought 11 causes of action alleged Defendants and Defendants denied each of Plaintiffs' allegations and asserted numerous defenses. Ultimately, after extensive motions practice and appeals over the course of nearly a decade, a sole cause of action for breach of contract remains in dispute.

After multiple rounds of negotiations, including an in-person mediation of counsel, Plaintiffs and Defendants entered into a Settlement Agreement and Release ("Settlement Agreement"), which the parties have attached to the Motion for Preliminary Approval. The

proposed settlement creates a Rule 23(b)(2) Settlement Class that will receive significant injunctive relief under the terms of the Agreement, while preserving any claims each Class Member may have against Defendants for individual damages. (Settlement Agreement §§ 4.6, 6.3.) Specifically, the Settlement will require significant injunctive relief regarding network security measures going forward.

Under Federal Rule of Civil Procedure 23, Plaintiffs and Defendants now seek preliminary approval of the proposed class action settlement. The parties request that the Court preliminarily certify the proposed Rule 23(b)(2) settlement by entering the proposed Preliminary Approval Order. A final motion and proposed order supporting the fairness of the proposed class action settlement will be submitted: (1) after implementation of the Notice Plan; and (2) before the Court's Final Approval Hearing.

For the reasons explained below, the proposed class action settlement is reasonable, fair, and adequate, and the Court should preliminarily approve it.

## I.     SETTLEMENT TERMS

### a.     *The Settlement Class*

Under the Settlement Agreement, the parties agreed to resolve the claims of a nationwide Rule 23(b)(2) class ("Settlement Class") defined as:

> All natural persons who purchased and/or possessed health insurance from CareFirst and whose personally identifiable information, personal health information, sensitive personal information was breached as a result of the 2014 CareFirst data breach, which was announced on or about May 20, 2015.

(Settlement Agreement § 2.22.)

### b.     *Injunctive Relief to the Settlement Class*

As a result of the Settlement Agreement, CareFirst has agreed to maintain, at minimum, the following security measures, which will provide significant injunctive relief:

-Mandatory training of all employees on privacy and security awareness as part of onboarding.

-Mandatory annual, refresher training of all employees on privacy and security awareness.

-Periodic simulated phishing-awareness campaigns, conducted at least quarterly.

-Mandatory phishing training required for anyone who clicks a link in a simulated phishing-awareness campaign.

-Conduct annual internal and external vulnerability scans.

-Multi-factor authentication required for network access.

-Adopt as a baseline the National Institute of Standards and Technology ("NIST") Cybersecurity Framework ("CSF"), or if those become obsolete, the prevailing industry standards.

-PHI / PII is encrypted at rest and in transit in alignment with regulatory compliance, customer contracts, industry standard, as well as the organization's data classification policy and standard. Data is encrypted at rest using Transparent Data Encryption (TDE) AES 256, Bitlocker for workstations, and in transit with TLS 1.2 or higher, or if those become obsolete, the prevailing industry standards.

-Access controls inclusive of the separation of basic user IDs from privileged IDs, just-in time access for privileged users, and privileged access workstations (jump stations), with limited resources and connectivity, which are isolated.

(Settlement Agreement § 4.6.)

In total, maintaining these controls significantly reduces the likelihood that Plaintiffs or others in the same position will have any personal data compromised going forward.

### c.    *Class Action Fairness Notice*

CareFirst will provide notice of the proposed settlement under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"). The CAFA Notice will be sent to the Attorney General

of the United States and to the attorneys general of all states and the District of Columbia and all U.S. territories. (Settlement Agreement § 4.5.)

### d.    Attorneys' Fees, Costs, and Service Awards

Class Counsel will apply for attorneys' fees and costs in an amount approved by the Court, but not to exceed $775,000. (*Id.* § 4.7.1.) In addition to this amount and the stated injunctive relief, each named Plaintiff also will apply for a service award of $3,500 each for their role as class representatives to compensate them for their efforts in prosecuting this case including, but not limited to, retaining counsel and staying apprised of and participating in settlement negotiations. (*Id.* § 4.7.2.)

### e.    Release of Claims

In return for the injunctive relief described above, Plaintiffs and the Settlement Class Members will agree to a waiver of the right to bring a class action against Defendants and related parties for claims arising from the 2014 data breach. (*Id.* § 6.1.) Importantly, the Settlement Agreement specifically reserves the right to bring individual claims against Defendants for damages, so long as they are individual, and not class, claims. (*Id.* § 6.3.)

### f.    Notice and Exclusions

Although class notice is not required for a class certified under Rule 23(b)(2), the Parties have agreed to issue notice to the Settlement Class, and the Settlement Agreement has adopted a Notice Plan that follows the notice plans used in other (b)(2) class cases. At a minimum, the Notice Plan will include the following:

1.    As soon as practicable following preliminary approval, the court-appointed Settlement Administrator, who has extensive experience in administering class action settlements, will create a Class Settlement Website which shall post important settlement documents, such as the Settlement Agreement and the Court's

4

Preliminary Approval Order, as well as a description of the Injunctive Relief to be provided and a copy of the Injunctive Relief Order. The Website shall further contain a frequently asked questions page, procedural information regarding the approval process, and details on the final approval hearing.

2.      The Settlement Website shall also contain the Internet Notice attached to this Memorandum as Exhibit 1, which explains the lawsuit and the settlement terms in both English and Spanish.

3.      The Settlement Administrator will distribute email notices to the Settlement Class members' emails that Defendants have on record that will contain information similar to the Internet Notice.

4.      The Settlement Administrator will purchase banner advertisements on appropriate websites that will take potential Settlement Class Members to the Class Settlement Website if they click on the banner advertisements.

5.      Finally, the Settlement Administrator will create and maintain a toll-free number that provides pre-recorded information on the Settlement in both English and Spanish and directs callers to the Class Settlement Website.

(Settlement Agreement § 4.4.) Defendants will be responsible for the costs of this Notice Plan. (*Id.* § 4.4.7.) As this is a Rule 23(b)(2) class settlement, there will be no right to opt-out of the Settlement, though Settlement Class Members may still object to the Settlement Agreement.

## II.    ARGUMENT

### a.    *Certification Standard*

A district court's "role in reviewing a proposed settlement agreement in a class-action lawsuit follows a 'three-stage process, involving two separate hearings.'" *Jones v. Chopra*, No. 18-2132 (BAH), 2023 U.S. Dist. LEXIS 164699, at *8–9 (D.D.C. Sept. 15, 2023) (quoting

*Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 189 (D.D.C. 2017) (quoting 4 William B. Rubenstein, [*9] *Newberg on Class Actions* § 13:10 (5th ed. 2014))). First, the parties present a proposed settlement agreement to the court for preliminary approval. *Ross*, 267 F. Supp. 3d 190. Second, if the court preliminarily approves the settlement and conditionally certifies the class, notice is sent to the class describing the terms of the proposed agreement and informing the class members of their rights and options with respect to the agreement. *Id.*; *see also* Fed. R. Civ. P. 23(e)(1). Finally, the court holds a hearing and may give final approval to a settlement agreement "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This lawsuit is at the initial preliminary approval stage, and plaintiffs seek both provisional certification of the Settlement Class for settlement purposes and preliminary approval of the proposed settlement agreement.

In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies Rule 23's requirements—the four prerequisites of Rule 23(a) as well as one of the three subsections of Rule 23(b)—and thus may be conditionally certified for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a). The Court must then decide whether the proposed settlement is fair, adequate, and reasonable pursuant to Rule 23(e).

Preliminary approval of the settlement is "*not* an approval of the settlement—instead, it is only an anticipatory judgment about what the Court is 'likely' to do." *See Gur-Ravantab v.*

*Georgetown Univ.*, No. 1:22-v-01038, 2024 U.S. Dist. LEXIS 12452, at *4 (D.D.C. July 16, 2024)

(citing *United States v. Seefried*, No. 1:21-cr-00287-TNM, 2025 Dist. LEXIS 53138, at *5 (D.D.C.

Mar. 26, 2024)). "Generally, preliminary approval of a class action settlement will be granted if it

appears to fall 'within the range of possible approval' and 'does not disclose grounds to doubt its

fairness or other obvious deficiencies, such as unduly preferential treatment of class

representatives or of segments of the class, or excessive compensation for attorneys.'" *Trombley

v. Nat'l City Bank*, 759 F. Supp. 2d 20, 23 (D.D.C. 2011) (quoting <u>Newberg on Class Actions</u>, §

11:25 (4th ed. 2010) and <u>Manual for Complex Litigation</u>, Third, § 30.41 (1999)); *see also In re

Vitamins Antitrust Litig.,* No. 99-197, 1999 U.S. Dist. LEXIS 21963, 1999 WL 1335318, at *5

(D.D.C. Nov. 23, 1999).

Here, the parties have reached a proposed agreement on behalf of the Settlement Class,

which should be preliminary approved for a Rule 23(b)(2) Settlement Class. *See Richardson v.

L'Oréal USA, Inc.*, 951 F. Supp. 2d 104, 106 (D.D.C. 2013) (quoting *In re Vitamins Antitrust

Litig.*, No. 99-cv-197, 1999 U.S. Dist. LEXIS 21963, at *5 (D.D.C. Nov. 23, 1999) (explaining

that preliminary approval of a class action settlement "lies within the sound discretion of the

court").

  **b.**   ***The Settlement Class Meets the Certification Elements***

    **i.**   *The Settlement Class satisfies Rule 23(a)*

The Court has already ruled that Rule 23(a)'s criteria are satisfied in connection with

certifying a class to pursue the breach of contract claim for nominal damages. *See* ECF No. 100

and ECF No. 110. We will still briefly list those Rule 23(a) criteria here:

    1.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable." There is no set minimum number of potential class members that fulfills the

numerosity requirement, but this factor is easily met here. There are approximately one million Settlement Class Members, including Plaintiffs. Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met. *See, e.g.*, *Radosti v. Envision Emi, LLC*, 717 F. Supp. 2d 37, 51 (D.D.C. 2010) (explaining that courts in this District have generally found this factor satisfied where at least 40 members were involved, and finding it easily satisfied where class was estimated at 13,500 members).

### 2.     Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)); *see also Garcia v. Johanns*, 444 F.3d 625, 631, 370 U.S. App. D.C. 280 (D.C. Cir. 2006).

### 3.     Typicality

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). The typicality requirement is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented." *Radosti*, 717 F. Supp. 2d at 52 (quoting *Lorazepam*, 202 F.R.D. at 27). Commonality and typicality tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the

class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

4.       Adequacy of Representation

Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class. *Gur-Ravantab*, 2024 U.S. Dist. LEXIS 124542, at *8 ("It requires, at a minimum, that the class representatives not "have a conflict of interest that pits [them] against other class members" and that their attorneys "be competent enough to handle the tough demands of a class action."); *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997).

The adequacy of representation requirement is met here. Plaintiffs understand and have accepted the obligations of class representatives, have adequately represented the interests of the putative class, and have retained experienced counsel who have handled many consumer-protection class actions. Plaintiffs' counsel has handled several consumer-protection and complex class actions, typically as lead or co-lead counsel.  *See* Declaration of Troy N. Giatras, Pages 4-7 (attached as Ex. 2) ("Giatras Decl.");

Plaintiffs have no antagonistic or conflicting interests with the Settlement Class Members. Plaintiffs and the Settlement Class Members alike seek relief for CareFirst's alleged actions. Plaintiffs are members of the Settlement Class and have no conflicting interests with other Settlement Class Members. Plaintiffs also have been very active in this case, including participating in depositions and settlement efforts. (*See* Giatras Decl. ¶¶ 6, 9, 11 and 12) As a result, the Settlement Class Members are adequately represented to meet Rule 23's requirements.

ii.       *The Settlement Class satisfies Rule 23(b)(2)*

If the requirements of Rule 23(a) are met, the proposed class must then fall into one of the categories set out in Rule 23(b) to warrant certification. The Settlement Class is an injunctive-relief-only settlement class under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). While Plaintiffs previously requested a Rule 23(b)(3) damages class, the Parties agree that the Court's rulings related to individual damages being limited to nominal damages makes a program of prospective injunctive relief pursuant to Rule 23(b)(2) a more appropriate means of resolving this matter than the previously asserted Rule 23(b)(3) damages class.

Rule 23(b)(2) certification is proper if members of the proposed class would benefit from the injunctive relief. *See, e.g.*, *Torres v. Del Toro*, No. 1:21-cv-306-RCL, 2021 U.S. Dist. LEXIS 206855, at *14–15 (D.D.C. Oct. 27, 2021) (relying on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)). In addition, any request for monetary relief by the class must be "incidental" to the injunctive relief before certification under Rule 23(b)(2) is appropriate. The Rule 23(b)(2) Settlement Class here satisfies both requirements. Plaintiffs allege on behalf of the Rule 23(b)(2) Settlement Class that Defendants' practices and procedures failed to prevent the 2014 data breach. Here, the Settlement Agreement treats all Rule 23(b)(2) Settlement Class Members alike in granting them the substantial benefits of Defendants' agreed adoption of certain minimum network security measures going forward. Injunctive relief is a powerful, efficient, and effective way of protecting broad interests, and while Defendants maintain that they have always acted in compliance with the law, the fact that the Settlement solidifies their conduct for the Settlement Class *as a whole* makes it appropriate for certification of the Settlement Class under Rule 23(b)(2). *Wal-Mart*, 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive

or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" (citation omitted)).

The Settlement also meets Rule 23(b)(2)'s second requirement that any request for monetary relief be merely "incidental" to the injunctive relief provided. Indeed, the Settlement does not provide monetary relief for Settlement Class Members. Moreover, like the members of the mandatory injunctive relief class in *Berry v. Schulman*, members of the Settlement Class here retain their ability to bring individual claims. 807 F.3d 600, 610 (4th Cir. 2015) (quoting *Dukes*, 564 U.S. at 365). This retained right to bring further litigation "mak[es] class-wide representation possible and opt-out rights unnecessary." *Id.* at 612–13.

### c.    The Settlement Satisfies the Requirements of Rule 23(e)(2)

"Rule 23(e) of the Federal Rules of Civil Procedure obliges parties to seek approval from the district court before settling a class-action lawsuit." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020) (citing Fed. R. Civ. P. 23(e)). When a court "reviews a proposed class-action settlement, it acts as a fiduciary for the class." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022). "In fulfilling this role, the district court must conclude that a proposed settlement is 'fair, reasonable, and adequate,'" which are the three requirements established by Rule 23(e)(2) of the Federal Rules of Civil Procedure. *Id.* (citing Fed. R. Civ. P. 23(e)(2)). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.'" *Randle v. SunTrust Bank, Inc.*, 2024 U.S. Dist. LEXIS 29178, at *19 (Feb. 21, 2024) (quoting *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004)).

In determining whether a settlement is fair, reasonable, and adequate," Rule 23(e)(2) states

that the Court should consider:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
>> (i)    the costs, risks, and delay of trial and appeal;
>>
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)    the terms of any proposed award of attorneys' fees, including timing of payments; and
>>
>> (iv)    any agreement required to be identified under Rule 23(e)(3);
>
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Randle*, 2024 U.S. Dist. LEXIS 29178, at *19–20 (citing *In re*

*Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104) (describing factors used in D.C. Circuit as arm's-

length negotiations; terms of the settlement in relation to the strength of the case; stage of the

proceedings; reaction of the class; and opinion of experienced counsel).

> *i.*    *Plaintiffs and Class Counsel Have Adequately Represented the Class.*

Rule 23(e)(2)'s first factor examines whether "the class representatives and class counsel

have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This assessment is "redundant

of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *In re Flint Water Cases*, 571

F. Supp. 3d 746, 780 (E.D. Mich. 2021) (quoting Albert Conte & Herbert Newberg, *Newberg on*

*Class Actions* § 13:48 (5th ed. June 2021 update)). Rule 23's adequacy requirements are met if:

"(1) the named plaintiff has interests common with, and not antagonistic to, the Class'[s] interests;

and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the

litigation." *Gibbs v. Stinson*, 2021 WL 4812451, at *16 (E.D. Va. Oct. 14, 2021) (quoting *Milbourne v. JRK Residential Am., LLC*, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014)).

This first factor is easily satisfied. Plaintiffs' interests and those of Class Members are fully aligned as their data was subject to the same network security controls at the time of the 2014 data breach, and the third-party cyberattackers accessed the same data for each of the Class Members. Additionally, Class Counsel has been practicing in the field of consumer protection for many years, and they believe that this settlement stacks up favorably when compared to other settlements over that time given the specific type of information compromised here. (*See* Giatras Decl. ¶¶ 11-12) Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See*, *e.g.*, *Cohen v. Warner Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 120–21 (D.D.C. 2007).

Given the substantial relief afforded the proposed settlement—especially when contrasted against the risks associated with litigating this matter—it is fair and appropriate for preliminary approval.

     *ii. Negotiations Were at Arm's Length and Involved a Respected Mediator.*

The second factor examines whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also Pigford v. Glickman*, 206 F.3d 1212, 1215 (D.C. Cir. 2000) (quoting *Pigford v. Glickman*, 185 F.R.D. 82, 98 (D.D.C. 1999) (explaining court must conclude that a proposed settlement is "not the product of collusion between the parties")*.* Here, all parties were represented by experienced counsel who vigorously litigated the case for nearly 10 years. There is no evidence suggesting the presence of any collusion or fraud.

To help confirm that negotiations were at arm's length, courts look at several other factors, including the presence of a mediator. As the leading class action treatise explains: "There appears

to be no better evidence of [a truly adversarial bargaining process] than the presence of a third-party mediator." Conte & Newberg, *supra*, § 13:48; *see also Flint Water Cases*, 571 F. Supp. 3d at 780 ("highly experienced mediators" provide "ample protections in their roles"). Here, the parties participated in multiple rounds of settlement discussions, including an in-person mediation before Attorney Edd McDevitt, who has more than 40 years of complex litigation experience, chaired the American Bar Association Alternative Dispute Resolution committee, and has brought about the successful conclusion of hundreds of disputes, to help reach the terms of their agreement. *Gur-Ravantab*, 2024 U.S. Dist. LEXIS 1124542, at *11 ("The involvement of a neutral mediator, coupled with the lack of evidence of collusion, indicates that the parties likely did engage in arm's length negotiations in good faith.").

    iii. *The Relief Provided to the Class Is Adequate.*

Rule 23(e)(2)(C) requires the Court to consider whether the relief is adequate, considering:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). These subfactors are molded into the D.C. Circuit's factor of the terms of the settlement in relation to the strength of the case. *See, e.g.*, *Randle*, 2024 U.S. Dist. LEXIS 29178, at *20–22. An analysis of each of the rule's subfactors shows that this settlement is fair, reasonable, and adequate.

    The first Rule 23(e)(2)(C) sub-factor requires the Court to evaluate the settlement against the costs, risks, and delay of trial and appeal. This factor strongly supports approval of the settlement. While Class Counsel strongly believes in the strength of this case, they also acknowledge that there are substantial risks associated with this litigation, some of which have come to light as this near decade-long case has proceeded. Most notably, from the start of litigation,

CareFirst has been adamant that it has strong defenses to Plaintiffs' claims, including that none of its members were actually injured as a result of the 2014 data breach, and that if the case were to proceed without a settlement. CareFirst also argues that its network security protocols at the time of the 2014 data breach were superior to standard industry practice and provide no basis for any legal liability, which is an inherently factual dispute for a jury to decide. Further, it is doubtful whether Plaintiffs could have forced and obtained injunctive relief without a settlement. *See, e.g.*, *Berry*, 807 F.3d at 610 (explaining that a settlement can allow for injunctive relief even where the plaintiffs' claims may not have been able to achieve the same result). And here, Plaintiffs' counsel had considerable discovery to reasonably assess the risks of litigation vis-à-vis the likelihood of success and potential range of recovery. *See, e.g.*, *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 565 F. Supp. 2d 49, 57 (D.D.C. 2008) (citing *In re Lorazepam & Corazepate Antitrust Litig.*, No. 99-cv-790, 2003 U.S. Dist. LEXIS 12293, at *4 (D.D.C. June 16, 2003)). This settlement comes "at a desirable point in the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense, and litigation." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 105.

Rule 23(e)(2)(C)'s second sub-factor requires the Court to evaluate the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. Here, Class Members will receive significant settlement benefits automatically, without needing to establish any individualized proof. This is important because "[t]he use of objective criteria to determine settlement distribution is a hallmark of fairness." *Flint Water Cases*, 571 F. Supp. 3d at 781. Because the injunctive relief applies across the board and requires no action by Class Members, while preserving Members' rights to bring individual claims, this factor weighs strongly in favor of approving the settlement.

Rule 23(e)(2)(C)'s third sub-factor requires the Court to evaluate the request for attorneys' fees, including the timing of the request. The focus of this analysis is whether there are signs that "counsel sold out the class's claims at a low value in return for [a] high fee." Conte & Newberg, *supra*, § 13:54. There are no such indications here. As outlined above, the Settlement Agreement obtains commitments from Defendants related to security controls that would otherwise not be obtainable through litigation alone. And although the Settlement does not include cash payments, Settlement Class Members may still seek individual claims if they believe they were harmed in the 2014 data breach. The Settlement thus preserves the rights of Settlement Class Members who believe they were directly harmed while obtaining injunctive relief focused on preventing Plaintiffs' alleged harms from occurring going forward.

It is also important to note that the attorneys' fee component of the settlement was only discussed after all other material settlement terms had been finalized. And the attorneys' fees were also negotiated under the supervision of the mediator, who is experienced enough to notice if Class Counsel were compromising the class members' claims for their own benefit. In this case, the Court had already ruled that the class itself would be limited to a recovery of nominal damages for the breach of contract claim.

Finally, under Rule 23(e)(3), Plaintiffs each reached separate confidential settlements to them individually only after the parties had agreed to the material terms of the class settlement.

### iv.     *The Settlement Treats Class Members Equitably Related to Each Other.*

The final factor under Rule 23(e)(2) requires a court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D) (emphasis added). This factor considers whether class members have been treated in a fair and impartial manner, but "[t]here is no requirement that all class members in a settlement be treated equally." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 876 (S.D. Iowa 2020) (emphasis in original)

(citation omitted). And when considering this factor, a court "must balance the claims of those with potentially substantial damages with those with potentially minimal or insignificant damages." *Id.* (citation omitted).

The settlement here achieves this balance. As noted above, the Settlement Agreement provides for injunctive relief that will reduce the likelihood of future problems, while preserving the right of Class Members to seek damages if they believe they have been individually harmed by the 2014 data breach. Thus, those with damages will still be able to pursue their claims. At the same time, all Class Members will still receive the direct benefits of the injunctive relief going forward.

> ### d.     *The Proposed Notice Plan Satisfies Rule 23*

Neither Rule 23 nor the case law requires individualized notice for a Rule 23(b)(2) settlement class, where class members do not have the opportunity to opt out of the settlement and are not required to take any affirmative action to receive the benefits of the settlement. Federal Rule of Civil Procedure 23(c)(2)(A) is explicit that even a litigated Rule 23(b)(2) class does not require any notice. Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(l) or (2), the court *may* direct appropriate notice to the class." (emphasis added)). Unlike class actions certified under Rule 23(b)(3), which require individual notice to class members and the opportunity to opt out of the settlement, class actions certified under Rule 23(b)(2) ordinarily do not require individual notice to class members because there is greater cohesion of interests in a (b)(2) class, as individual damages claims are not at stake. *See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457,466 (S.D. Fla. 2002) ("Notice (and exclusion opportunity) is not required in Rule 23(b)(2) actions."); 7B Charles Alan Wright et al., Federal Practice and Procedure § 1793 (3d ed. 2006) (stating that while Rule 23(b)(3) classes require mandatory notice, notice is not as important for Rule 23(b)(2) classes "because the class typically will be more cohesive");

Fed. R. Civ. P. 23 advisory committee's note (2003 Amendments) (explaining that "[t]he authority to direct notice to class members in a (b)(1) or (b)(2) class should be exercised with care" because there is no right to request exclusion and because of the potentially "crippl[ing]" cost of providing notice). That said, because the absent class members are giving up their right to bring a class action, *see Richardson*, 951 F. Supp. 2d 181, the Parties are adopting a comprehensive Notice Plan that provides reasonable notice to the Settlement Class. *See* Fed. R. Civ. P. 23(e)(B).

Email notice is acceptable even under a Rule 23(b)(3) class where individual notice is required. *See* Fed. R. Civ. P. 23(c)(2)(B) (including "electronic means" as one of the ways notice may be provided). Email notice is particularly appropriate here given size of the class and that the only people whose data was compromised in the 2014 data breach were those that signed up electronically through CareFirst's online portal when providing their email address to gain access. *See, e.g.*, *In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2012 U.S. Dist. LEXIS 93284, at *12–13 (N.D. Cal. July 5, 2012) (providing for email notice to the settlement class and finding that email notice was especially appropriate there given that class members had to provide an email address when creating their customer account).

Use of online publication of notice, as set forth in the Parties' proposed notice program, meets the reasonable notice requirement of Rule 23(e) when providing notice to a large, nationwide Rule 23(b)(2) class. *In re NASDAQ MarketMakers Antitrust Litig.*, 169 F.R.D. 493, 532 (S.D.N.Y. 1996) ("Notice under Rule 23(b)(2) is flexible, and may consist entirely of published notice in appropriate circumstances."). The Parties modeled the Notice Plan here on the plans for Rule 23(b)(2) notice plans in other (b)(2) class cases approved by other courts; while courts in this District do not have appeared to have considered this issue, there are a number of consumer class action cases in the Eastern District of Virginia that have adopted similar notice plans in Rule

23(b)(2) settlements. *See, e.g.*, *Stewart v. LexisNexis Risk Data Retrieval Servs., LLC*, No. 3:20-cv-00903-JAG, ECF No. 70 (E.D. Va. Feb. 25, 2022) (approving notice to Rule 23(b)(2) class that included settlement website and online advertising); *Clark v. Trans Union LLC*, No. 3:15-cv-00391-MHL, ECF No. 248 (E.D. Va. Mar. 23, 2018) (approving notice to Rule 23(b)(2) class that included settlement website, publication of notice, and a toll-free number); *McAfee v. MeridianLink, Inc.*, No. 3:23-cv-439, ECF No. 73 (E.D. Va. Aug. 2, 2024). As in those cases, the plan here is intended to reach the maximum number of possible Settlement Class Members in the two most spoken languages in the United States, and the Parties will work with the Settlement Administrator to determine the most effective websites to use for advertising the Settlement Website to potential Settlement Class Members.

## III.    CONCLUSION

The proposed class action settlement is an excellent result considering the circumstances of this litigation. The terms of the proposed class action settlement, as well as the circumstances of negotiations and its elimination of further costs caused by litigating this case through trial and further appeals, satisfy the structures for preliminary approval.

For these reasons, Plaintiffs request that the Court issued the proposed Preliminary Approval Order.

Respectfully submitted,

**PLAINTIFFS**

_____/s/ Troy N. Giatras_____
Troy N. Giatras Esq., Bar No. 429086
Matthew W. Stonestreet, Esq. (Admitted PHV)
*The Giatras Law Firm, PLLC*
118 Capitol Street
Suite 400
Charleston, WV 25301
304-343-2900 (Tel.)

304-343-2942 (Fax)
troy@thewvlawfirm.com
matt@thewvlawfirm.com

Jonathan B. Nace, Esq. D.C. Bar No. 985718
*Nidel & Nace, PLLC*
2201 Wisconsin Ave., NW
Suite 200
Washington, DC 20015
202-780-5153 (Tel.)
301-963-8135 (Fax)
jon@nidellaw.com

Christopher T. Nace, Esq. Bar No. 977865
*Paulson & Nace, PLLC*
1025 Thomas Jefferson Street, NW
Suite 810
Washington, DC 20007
202-463-1999 (Tel.)
202-223-6824 (Fax)
ctnace@paulsonandnace.com

## CERTIFICATE OF SERVICE

This is to certify that on this 31st day of January, 2025, I caused a copy of the foregoing Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement to be served upon the Court and all parties via ECF filing.

_____/s/ Troy N. Giatras_____
Troy N. Giatras Esq., Bar No. 429086